Thorp agt. Thorp.

# N. Y. SUPERIOR COURT.

## Gould H. Thorp agt. Laura M. Thorp.

*Marriage — Divorce — Foreign marriage in evasion of domestic divorce — Effect of marriage contracted in another state when forbidden by a judgment of divorce of a court of this state.*

Where a person from whom a former wife obtained a decree of divorce in this state, in which decree he was forbidden to marry again during her lifetime, goes to another state for the purpose of evading the law, and there, the first wife being still alive, contracts a second marriage, immediately thereafter returns to this state.

*Held,* that although it be true that such marriage is to be judged by the *lex loci contractus,* the preliminary question of the capability of the party to contract a second marriage is presented when such party appeals to a tribunal of this state, and that capability is to be determined by the law, not of Pennsylvania but of New York; and as by the laws of the latter state he was absolutely forbidden to contract it, such second marriage was void (*see Kerrison agt. Kerrison, ante,* 21).

*General Term, January,* 1881.

*Before* Spier *and* Freedman, *JJ.*

This is an appeal from an order and judgment in an action for an absolute divorce on the ground of adultery. The referee appointed by the court to hear and determine, found for the plaintiff. Upon a motion made to confirm the referee's report the court dismissed the complaint, and judgment of dismissal was entered accordingly, with costs.

*D. M. Porter*, attorney and of counsel for plaintiff and appellant.

*Alvin Burt*, attorney and of counsel for defendant and respondent.

SPIER, *J.* — The answer in substance denies the adultery charged in the complaint, and sets up counter charges against the plaintiff; and, as a defense, charges a former marriage of the plaintiff with one Emma C. Reed, in 1855, and a judgment of divorce in an action brought by her against the plaintiff in this action for adultery, in the supreme court, Kings county, in October, 1861, and a decree entered in November, 1861, in the usual form, forbidding the plaintiff to marry again during the life of the said Emma; that the said Emma was living when the plaintiff married the defendant herein.

The defendant gave no evidence as to the adultery charged in her answer, nor did she give any testimony contradicting the evidence charged against her in the complaint, but rested her defense solely upon the invalidity of the alleged marriage between her and the plaintiff.

It appears in the case that the said plaintiff, Gould H. Thorp, and the defendant, Laura M. Thorp, both residing here, to evade the laws of this state and said judgment and decree, went from the state of New York to the city of Philadelphia, entered into the contract of marriage mentioned in the complaint, returned to this state and continued their residence therein ever since said marriage.

When the plaintiff left this state for Pennsylvania and had the marriage ceremony there performed, it was, as must be assumed from the immediate return of the parties to be, their intention to continue and make this state their domicile and enjoy the protection of its laws. A marriage contracted by a person situated as is this plaintiff, is forbidden by express statute of the state. " Whenever a marriage shall be dissolved pursuant to the provisions of this article, the complainant may marry again during the lifetime of the defendant; but no de-

fendant convicted of adultery shall marry again until the death of the complainant." By another section it is provided that any violation of this provision "shall be absolutely void."

It must be admitted that the validity of a marriage like the present has been heretofore an open question. We are not informed that the court of last resort in this state has determined any of the questions presented in this case. The supreme court of this district has decided them against the validity of the marriage by a majority of the court upon able opinions delivered by two of the learned judges on both sides of the question (*reported in* 2 *Hun*, 238), and we believe the supreme court of the second district have lately adopted the views of the court of this district.

Among the objections urged are that the statutes are fully satisfied by a construction which limits their prohibition to a second marriage contracted within this state. If this be conceded, it necessarily follows that the intention of the statutes was to permit either party to the contract, divorced for either his or her adultery, to go outside of its jurisdiction and marry again while the former husband or wife were living within that jurisdiction. It seems plain to us that this view of the case wholly overlooks the object and intention of the legisla-. ture. The statute not only forbids the marriage by prohibitory words, declaring it to be wholly void, but also attaches to the violation of the contract of marriage a punishment by depriving the guilty party of the power of entering into the marriage state during the lifetime of the injured party.

The question is one of policy of the law in its administration. It is the duty of those who administer the laws to see that they shall not be disregarded or violated by any of its citizens while enjoying its protection and privileges. The plaintiff here, by a decree of the court exercising jurisdiction, being forbidden to enter into the contract of marriage during the life of the partner he was bound to cherish and protect, goes into a foreign jurisdiction, sets at defiance the mandate of the court of his domicil by a second marriage, and now

appeals to be relieved from the consequences of a contract illegal and void by the laws of his own state.

The case here is not one of domicile in Pennsylvania, for it is stated that the parties were domiciled here and went to Pennsylvania in fraud of our law. If the laws of Pennsylvania allow of such a marriage, and although it be true that that marriage is to be judged by the *lex loci contractus*, it is but reasonable that every state must so far respect its own laws and their operation upon its own citizens as not to allow them to be evaded by acts in another state for the purpose of defeating them.

We are of the opinion that in determining the matter before us a preliminary consideration is presented, that is, the capability of the party to contract the second marriage; and the question is, whether that capability is to be determined by the law of Pennsylvania or the law of New York.

. The plaintiff here appeals to the tribunal of the state to which he owes allegiance and presents the question for its decision, whether he has the capacity to contract a marriage out of the state, and which by a decree of one of its tribunals he was absolutely forbidden to contract.

The answer to this question is settled by a direct adjudication in *Conway* agt. *Beasely* (3 *Hagg.*, 639), which is precisely our case, in which persons domiciled in England were divorced in Scotland, and then one of them married again in Scotland and upon coming again into England that second marriage was declared null, though it was admitted to be good by the law of Scotland.

The plaintiff has chosen the tribunal exercising jurisdiction within the state of his residence to decide a question involving the validity of a contract entered into by him outside of that jurisdiction which he was forbidden to make by a judgment or decree of one of its own tribunals.

The order and judgment appealed from should be affirmed, with costs.

FREEDMAN, J., concurs.